IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KIRK A. SIMMONS, | : | |
| | : | |
| Movant/Defendant, | : | |
| | : | |
| v. | : | Civ. Act. No. 15-459-LPS |
| | : | Cr. Act. No. 13-97-LPS |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent/Plaintiff. | : | |

## MEMORANDUM OPINION

---

Kirk A. Simmons. *Pro se* Movant.

Graham Lewis Robinson, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

---

February 3, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Kirk A. Simmons ("Movant") filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (D.I. 56) The United States ("Government") filed an Answer in Opposition. (D.I. 71) For the reasons discussed, the Court will deny Movant's § 2255 Motion without holding an evidentiary hearing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On or about June 13, 2013, a Delaware State Police ("DSP") detective assigned to the Delaware Child Predator Task Force ("UC-1") undertook an online undercover investigation for individuals seeking to meet and engage in unlawful sexual activity with minors. (D.I. 71 at 2) At approximately 9:50 a.m. on June 13, 2013, UC-1 posted an advertisement in the "personals" section of the adult social networking website located at www.wifelovers.com. The advertisement was entitled "fam love/taboo" and read: "41 dad of 2 looking for very discreet/no games or RP fun. Nothing off limits." *Id.* UC-1 wrote that "serious" responders should contact him at an undercover Yahoo email address listed in the advertisement. *Id.*

On or about June 13, 2013, at approximately 3:21 p.m., UC-1 received an instant message ("IM") from a subject with the screen name "krk.smmns," who was subsequently identified as Movant. (D.I. 71 at 2) The IM stated that he "saw [UC-1's] posting on Personals on wifelovers" and was "looking for someone to cum with." *Id.* After some conversation about what type of sexual activity UC-1 was proposing, UC-1 explained that he was divorced and was referring to his "daughter," whom he had custody of on certain weekdays and weekends. Movant then spent the next several minutes asking a series of questions regarding whether the "daughter" was "interested;" "can this happen during weekdays;" and "Possible the three of us could meet?" (D.I. 71 at 2-3)

UC-1 then wrote: "i have to ask how young is too young dont want to have u freak out

and need to be up front so we dont waste time." The following conversation ensued:

> 3:43:03 PM krk.smmns: I really don't know
> 3:43:09 PM krk.smmns: is she a teenager?
> 3:43:15 PM UC-1: 13
> 3:43:22 PM UC-1: 14 in december
> 3:43:45 PM krk.smmns: I assume a virgin
> 3:43:50 PM UC-1: lol no
> 3:43:59 PM krk.smmns: have u had her?
> 3:44:03 PM UC-1: yes
> 3:44:12 PM krk.smmns: and she wants another?
> 3:44:25 PM UC-1: like i said told her i want to watch
> 3:44:33 PM UC-1: shes not a whore or anything
> 3:44:35 PM krk.smmns: and she is OK with that?
> 3:44:52 PM UC-1: never doen this
> 3:44:54 PM UC-1: done
> 3:44:58 PM krk.smmns: this has possibilities . . .
>
>        \*  \*  \*
>
> 3:48:34 PM krk.smmns: how soon for this to happen?
> 3:49:12 PM UC-1: lol sry sometime late june july id rather be comfortible not rush
> 3:49:20 PM krk.smmns: I understand
> 3:49:31 PM krk.smmns: can u host? motel?
> 3:49:40 PM UC-1: def hotel 1st time
> 3:49:45 PM krk.smmns: of course
> 3:50:02 PM krk.smmns: talk to her, see if she wants to chat with me
> 3:50:15 PM krk.smmns: want her comfortable too
> 3:50:26 PM UC-1: i will but only if this is serious not here for rp [ROLE PLAY] or cyber sex
> 3:50:43 PM krk.smmns: serious yes
> 3:50:57 PM UC-1: ok chat again soon

(D.I. 71 at 3)

At approximately 9:36 a.m. the next morning, June 14, 2013, Movant instant messaged UC-1 and asked: "you ponder our discussion yesterday?" (D.I. 71 at 4) After UC-1 responded that he wanted to go through with a sexual liaison involving his 13-year-old daughter, Movant asked "what has she experienced so far?" *Id.* When UC-1 asked "what would u like to do to her," Movant responded: "missionary, doggie." The conversation then continued with Movant

2

and UC-1 discussing the specifics of UC-1's "daughter's" sexual experiences with adult men. *Id.*

On or about June 19, 2013, UC-1 and Movant engaged in another instant message conversation during which they discussed the details of meeting so that they could engage in unlawful sexual activity with UC-1's 13-year-old "daughter." (D.I. 71 at 4) Specifically, they discussed the details of a meeting and how to avoid law enforcement scrutiny. Movant wrote: "neither of us wants trouble;" "how do we make this safe?" and "I have a lot to lose, so do you." *Id.*

Between June 28 and July 18, 2013, Movant and UC-1 engaged in a number of other online conversations, during which they discussed meeting to engage in sexual activity with UC-1's 13-year-old "daughter." (D.I. 71 at 4) During these conversations, UC-1 sent photographs of his supposed "daughter" to Movant, who sent a photograph of himself to UC-1. Also during the chats, Movant described in detail the particular types of sex acts he intended to engage in with the fictitious minor. At one point during a July 9, 2013 online chat, Movant asked for additional photographs of UC-1's daughter. After UC-1 wrote back "u can take ur own if u want when we meet," Movant responded: "I could bring a camera . . . capture the wet moist pink moments." *Id.*

Movant and UC-1 agreed to meet on July 18, 2013, at approximately 11:30 a.m., at the Sleep Inn Hotel, in Newark, Delaware. (D.I. 71 at 5) They discussed going into the hotel and simultaneously engaging in sex acts with UC-1's 13-year-old "daughter." *Id.*

On or about July 18, 2013, at approximately 11:10 a.m., Movant texted UC-1 that he was en route to the hotel and that he would be driving his red Volkswagen Jetta. (D.I. 71 at 5) DSP units stationed near Bank of America's Deerfield office on Paper Mill Road, in Newark, observed Movant driving a red Volkswagen Jetta. DSP units surveilled Movant as

he traveled directly to the parking lot of the Sleep Inn Hotel, in Newark. Once Movant arrived at the hotel parking lot, DSP officers removed him from the vehicle, confirmed his identity, and arrested him. A search of Movant's vehicle revealed a black bag that contained a Canon digital camera and a laptop belonging to Bank of America. *Id.*

DSP officers took Movant into custody and transported him to DSP Troop 2, where he waived his *Miranda* rights and participated in a recorded interview. (D.I. 71 at 5) During that interview, Movant admitted that he was the user of the "krk.smmns" Yahoo account and that he had responded to a personal advertisement for "family love" on the "wifelovers.com" website. *Id.* Movant stated that he believed that the advertisement was posted by a man who was looking to have a sexual encounter with "his daughter and another man." *Id.* Movant stated that he had exchanged electronic messages with this "father," who was willing to allow Movant to join him in engaging in sex acts with his 13-year-old "daughter" at the Sleep Inn Hotel. *Id.* Movant stated that he actually did intend to engage in sex acts with the 13-year-old "girl" and her father at the hotel. Movant also stated that he brought a camera to take pictures of the sexual activity with the 13-year-old "daughter," so he could "enjoy the pictures later." *Id.*

Movant was charged with attempted third degree rape in violation of Delaware law. (D.I. 71 at 6) He posted bail and was released from state custody. *See id.* On August 28, 2013, Movant was arrested on a federal criminal complaint charging him with attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). (D.I. 2; D.I. 71 at 6) He was subsequently indicted on two charges: (1) attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b); and (2) attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) and (3). (D.I. 12; D.I. 71 at 1) On February 25, 2014, Movant pled guilty to attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). (D.I. 28; D.I. 58) The Court sentenced

4

him on August 15, 2014 to a mandatory minimum term of 120 months of incarceration to be followed by ten years of supervised release. (D.I. 41; D.I. 53) Movant did not appeal his conviction or sentence.

Movant timely filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant To 28 U.S.C. § 2255 ("2255 Motion"). (D.I. 56) The Government filed a Reply in Opposition. (D.I. 71)

## III. DISCUSSION

The pending § 2255 Motion asserts the following four grounds for relief: (1) Movant's post-arrest recorded statement on July 18, 2013 was coerced and involuntary; (2) Movant's July 18, 2013 arrest for a violation of Delaware law was illegal; (3) the Government engaged in willful, repetitive, and intentional efforts to obscure the truth by selectively highlighting incriminating facts to the Court and by not producing, until shortly before the plea hearing, photographs of Movant's vehicle in the hotel parking lot at the time of his arrest; and (4) defense counsel provided ineffective assistance by failing to seek to suppress Movant's July 18, 2013 confession and by failing to present "mitigating" evidence during Movant's case, which consisted of photos from the arrest scene and Movant's blood pressure readings at the time of his arrest. The Government contends that Claims One, Two, and Three should be denied as procedurally barred or, alternatively, as waived by the entry of the guilty plea. The Government also contends that Claim Four should be denied as meritless.

### A. Claims One, Two, and Three: Procedurally Barred and/or Waived

Relief under 28 U.S.C. § 2255 is reserved for extraordinary circumstances. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993). If a movant fails to raise a claim on direct appeal, that claim is procedurally defaulted and cannot thereafter be reviewed pursuant to 28 U.S.C. § 2255 unless the movant demonstrates cause for the default and prejudice resulting therefrom, or that she is actually

innocent. *See Bousley v. United States*, 523 U.S. 614, 616, 621-23 (1998). To establish cause for a default, a movant must demonstrate that "some objective factor external to the defense impeded counsel's efforts to raise the claim." *United States v. Essig*, 10 F. 3d 968, 979 (3d Cir. 1993), *abrogated on other grounds as explained in United States v. Peppers*, 482 F. App'x 702, 704 n.5 (3d Cir. 2012). Significantly, an attorney's failure to preserve or raise a claim on direct appeal can constitute cause for a movant's procedural default only if counsel's failure amounts to constitutionally ineffective assistance of counsel. *See Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009). To establish prejudice, a movant must show that "that the errors at [her] trial . . . worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 179 (1982). Notably, if the movant fails to demonstrate cause, a court is not required to determine if the movant was prejudiced by the default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986).

The record in this case reveals that Movant defaulted Claims One, Two, and Three because he did not raise the claims on direct appeal. Movant vaguely attempts to establish cause by alleging ineffective assistance of counsel, stating that the "record does not evidence any effort by [defense counsel] to fulfill [the] constitutionally-imposed duty [of consulting with him concerning a direct appeal]." (D.I. 78 at 3) An attorney's failure to file a notice of appeal which was expressly requested by a defendant constitutes ineffective assistance sufficient to satisfy the cause prong. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). Here, however, Movant does not explicitly assert that he asked defense counsel to file an appeal or that defense counsel failed to consult with him about the possibility of filing a direct appeal. The transcript of Movant's change of plea colloquy also demonstrates Movant knew about and understood his right

6

to appeal. (D.I. 71-2 at 17) The Court concludes that Movant's unsupported and vague assertion regarding defense counsel's alleged failure to consult with him about an appeal is insufficient to establish cause.

Given Movant's failure to establish cause, the Court will not address the issue of prejudice. The Court also notes that Movant's default of Claims One, Two, and Three cannot be excused under the miscarriage of justice exception to the default doctrine, because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One, Two, and Three as procedurally barred.

Nevertheless, even if Claims One through Three were not procedurally barred, the Court would still deny them. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). When a § 2255 motion collaterally challenges a conviction obtained pursuant to a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). Stated another way, a defendant who has knowingly and voluntarily pled guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Pursuant to Federal Rule of Criminal Procedure 11, a plea of guilty will be deemed voluntary if, before the plea is accepted, the court addresses the defendant personally and determines that: (1) the defendant understands the rights he is waiving by pleading guilty, the maximum and mandatory minimum penalties, the defendant's right to appeal and/or collaterally attack the sentence, and the court's sentencing obligations in applying the sentencing guidelines, Fed. R. Crim.

P. 11 (b)(1); (2) the plea is voluntary and did not result from force, threats, or promises, Fed. R. Crim. P. 11(b)(2); and (3) there is a factual basis for the plea, Fed. R. Crim. P. 11(b)(3). When reviewing the voluntariness of an entered guilty plea, a court must remember that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

During the plea colloquy in this case, Movant explicitly affirmed under oath that he had reviewed and discussed the charges with defense counsel, and that he understood the charges against him, the terms of the written plea agreement, and the Government's burden of proof to establish his guilt. (D.I. 58 at 4-23) Movant also affirmed that he was not forced or threatened to enter the plea, that he understood the penalties he faced, that the Government's recitation of the factual basis for the plea was true, and that he understood the consequences of his guilty plea and his right to appeal. *Id.* Based on Movant's statements, the Court found that Movant "is fully competent and capable of entering an informed plea, that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense," and accepted his plea of guilty. (D.I. 58 at 25) Movant's allegations in this proceeding fail to provide compelling evidence as to why the statements he made during the colloquy should not be presumptively accepted as true. Thus, the Court concludes that Movant, by knowingly, voluntarily, and intelligently entering a guilty plea, waived his right to raise Claims One, Two, and Three in the instant § 2255 Motion.

**B. Claim Four: Ineffective Assistance of Counsel**

In Claim Four, Movant contends that defense counsel provided ineffective assistance by failing to seek suppression of his recorded police statement on the basis that it was coerced and involuntary,

8

and by failing to present what he characterizes as "mitigating" evidence during the change of plea colloquy and sentencing hearing. Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500 (2003).

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, Movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. Under the second *Strickland* prong, Movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). In the context of a guilty plea, a movant satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A court can choose to address the prejudice prong before the deficient performance prong and may reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 668. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689.

### 1. Movant's recorded police statement

Movant's contention that his recorded police statement was coerced and involuntary is belied by the video and audio recording of that statement. The recording clearly shows that Movant was advised of his *Miranda* rights at the beginning of the confession, that he understood his rights,

9

and that he affirmatively agreed to proceed with the police interview. In fact, Movant asked to read the detective's *Miranda* instructions and asked a question to clarify its meaning. Thereafter, Movant provided a full descriptive confession of his criminal conduct. The contents of Movant's recorded statement establish that there was no factual basis for filing a motion to suppress the statement on the grounds of coercion and involuntariness. Thus, defense counsel did not perform deficiently by refraining from filing a meritless suppression motion, nor was Movant prejudiced by counsel's failure to file a meritless motion. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

### 2. Mitigating evidence

Movant's contention regarding defense counsel's failure to present "mitigating evidence" to the Court is similarly unavailing. Movant's reference to "mitigating evidence" appears to include Movant's blood pressure records from the period surrounding his police statement, photographs of his arrest in the parking lot showing that the police blocked Movant's car as he was attempting to exit the parking lot, and the logs of his internet chats with the undercover police officer. (D.I 56 at 21-22)

Contrary to Movant's characterization, the evidence to which he refers is not mitigating with respect to the offense to which he pled guilty -- attempted enticement and coercion of a minor. The chat logs and the facts recited during the plea colloquy demonstrate that Movant acted with the specific intent to entice and coerce a minor and that he took a substantial step toward doing so by traveling to the pre-arranged meeting location. Defense counsel's "failure" to produce the evidence to which Movant now points did not affect the Court's determination that Movant's guilty plea was knowing and voluntary.

In addition, since Movant received the mandatory minimum in this case, he could not have received a lower sentence. Consequently, Movant cannot demonstrate a reasonable probability that the outcome of the sentencing hearing would have been different but for defense counsel's "failure" to produce the "mitigating" evidence during the sentencing hearing. Accordingly, the Court will deny Claim Four as meritless.

## IV. PENDING MOTION

Movant filed a Motion for In-Camera Review of Grand Jury Proceedings, in order to support his § 2255 Motion by showing that "the prosecutor and/or law enforcement personnel [b]e potentially called as witnesses, namely, Special Agent McCall or Detective McKay, did violate [Movant's] due process rights through their misconduct – by presentation of or by implied reference to the evidence clearly falsified by McCall (his criminal complaint), by presentation of or implied reference to alleged evidence (confession) that had been obtained illegally by McKay in violation of the 5th Amendment." (D.I. 95 at 3) Having determined that the instant § 2255 Motion does not warrant relief, the Court will dismiss as moot the Motion for In-Camera Review of Grand Jury Proceedings.

## V. EVIDENTIARY HEARING

Section 2255 requires a district court to hold a prompt evidentiary hearing unless the "motion and the files and records of the case conclusively show" that the Movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Fed. R. Civ. P. 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that Movant is not entitled to relief. Therefore, the Court will deny Movant's § 2255 Motion without an evidentiary hearing.

11

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Movant's claims do not warrant relief, and is persuaded that reasonable jurists would not find this assessment debatable. Thus, the Court will not issue a certificate of appealability.

## VII. CONCLUSION

For all of the foregoing reasons, the Court will dismiss Movant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence without an evidentiary hearing. Additionally, the Court will not issue a certificate of appealability. The Court shall issue an appropriate Order.